1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KEVIN CURLEY,                              No.  2:17-cv-0105 WBS AC P

12            Plaintiff,

13        v.                                     ORDER AND FINDINGS &
                                                 RECOMMENDATIONS
14    RAJA DUTTA,

15            Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court are the parties' cross-motions for summary judgment

19   (ECF Nos. 41, 44) and plaintiff's motions to compel and to amend the complaint (ECF Nos. 45,

20   50).

21        I.      Procedural History

22            On screening, the court found that the complaint stated claims against defendant Dutta for

23   violations of substantive due process related to alleged involuntary injections, but failed to state

24   claims for violations of procedural due process or substantive due process claims related to oral

25   medication.  ECF No. 10.  Plaintiff was given the choice between proceeding on the complaint as

26   screened or amending the complaint.  Id. at 8.  Plaintiff elected to proceed on the complaint as

27   screened, and voluntarily dismissed his procedural due process claims and substantive due

28   process claims related to oral medication.  ECF No. 13.  After the close of discovery, the parties

1

1   filed motions for summary judgment.  ECF Nos. 41, 44.  Plaintiff then proceeded to file a motion

2   to compel discovery and a motion to amend the complaint.  ECF Nos. 45, 50.

3       II.     Plaintiff's Allegations

4           The complaint alleges that defendant Dutta violated plaintiff's rights under the Fourteenth

5   Amendment when he subjected plaintiff to involuntary injections of antipsychotic drugs.  ECF

6   No. 1.  On July 19, 2016, defendant interviewed and diagnosed plaintiff with Bipolar Affective

7   Disorder.  Id. at 3-4.  Defendant asked plaintiff to sign a medication consent form to take

8   Risperdal orally, but plaintiff disagreed with the new diagnosis and initially refused to sign.  Id. at

9   4.  Defendant then threatened to file for a Keyhea order[1] if plaintiff continued to refuse

10  medication, and plaintiff ultimately signed the consent in order to avoid receiving injections.  Id.

11  at 4-5.

12          The following day, despite plaintiff's written consent to take medication orally, plaintiff

13  received an Involuntary Medication Notice.  Id. at 5.  In the form, defendant checked that plaintiff

14  was a "Danger to Self" and "Gravely Disabled and Lacks Capacity to Refuse Treatment."  Id. at

15  5, 23.  Plaintiff alleges that defendant's finding was false and unnecessary because he was not a

16  danger and had consented to taking the medication orally.  Id. at 5-6.  On August 4, 2016,

17  plaintiff attended an involuntary medication hearing where defendant perjured himself and an

18  order was issued granting defendant's request to involuntary medicate plaintiff.  Id. at 6.

19  Approximately ten minutes after the hearing, defendant ordered that plaintiff receive "a

20  Risperdal [sic] 'Hot Shot,'" which was given against his will.  Id.  Plaintiff alleges the "Hot

21  Shot" left him in a "comatose-zombie like state."  Id.  Defendant ordered that plaintiff be

22  involuntarily medicated on four additional occasions, and each time he suffered from a

23  "comatose-zombie like state."  Id. at 3, 6-7.

24  ////

25  

26  [1]  In Keyhea v. Rushen, the California Court of Appeals upheld a consent decree that "enjoined
    the State from subjecting prisoners to long-term involuntary medication without adhering to

27  certain of the procedural requirements contained in specified provisions of the Lanterman-Petris-
    Short Act (Welf. & Inst. Code, §§ 5000 et seq.) (hereafter LPS) and the Probate Code."  178 Cal.

28  App. 3d 526, 532, 542 (1986).

1    III.    Plaintiff's Motion to Compel

2           Plaintiff has filed a motion to compel responses to various discovery requests.  ECF No.

3    45-47.  However, at the time plaintiff filed his motion, discovery—including the time for filing

4    motions to compel—had been closed for nearly three months.  See ECF No. 34 at 5 (setting

5    discovery deadline).  Plaintiff offers no explanation for his failure to file the motion to compel

6    before the deadline, or for his delay in bringing the motion.  Even if the court were inclined to

7    consider the untimely motion, with the exception of a single request (ECF No. 46 at 5) which

8    defendant's counsel claims he never received (ECF No. 49 at 2), plaintiff has failed to provide the

9    requests at issue and defendant's responses.

> The Court does not hold prisoners proceeding pro se to the same
> standards that it holds attorneys.  However, at a minimum, as the
> moving party plaintiff bears the burden of informing the court of
> which discovery requests are the subject of his motion to compel and,
> for each disputed response, why defendant's objection is not
> justified.

14   Waterbury v. Scribner, No. 1:05-cv-0764 OWW DLB PC, 2008 WL 2018432, at *1, 2008 U.S.

15   Dist. LEXIS 53142, at *3 (E.D. Cal. May 8, 2008).  Without the requests, defendant's responses,

16   and plaintiff's explanation as to why the responses are deficient, the court is unable to determine

17   whether production should be compelled.

18          The court also notes that plaintiff argues in opposition to defendant's summary judgement

19   motion that the motion should be stayed because he has not had sufficient opportunity to obtain

20   necessary facts.  ECF No. 52 at 6-7.  This claim is unfounded and does not support granting the

21   motion to compel or staying defendant's motion for summary judgment.  Plaintiff argues that he

22   has not been able to obtain necessary facts because of defendant's untimely request to extend the

23   discovery deadline, which was denied.  Id.  However, defendant's failure to timely seek to extend

24   his deadline to conduct discovery has no bearing on plaintiff's ability to conduct discovery within

25   the time provided.

26          For these reasons, the motion to compel will be denied, as will plaintiff's request to stay

27   the motion for summary judgment.

28   ////

3

1    IV.    Motion to Amend

2         Plaintiff has filed a motion to amend the complaint.  ECF No. 50.  However, the motion

3    does not explain what amendments plaintiff seeks to make or include a copy of the proposed

4    amended complaint as required by Local Rule 137(c).  The motion to amend will therefore be

5    denied.

6    V.    Motions for Summary Judgment

7         A.    Legal Standards for Summary Judgment

8         Summary judgment is appropriate when the moving party "shows that there is no genuine

9    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

10   Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

11   of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

12   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

13   moving party may accomplish this by "citing to particular parts of materials in the record,

14   including depositions, documents, electronically stored information, affidavits or declarations,

15   stipulations (including those made for purposes of the motion only), admissions, interrogatory

16   answers, or other materials" or by showing that such materials "do not establish the absence or

17   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

18   support the fact."  Fed. R. Civ. P. 56(c)(1).

19        "Where the non-moving party bears the burden of proof at trial, the moving party need

20   only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

21   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

22   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

23   motion, against a party who fails to make a showing sufficient to establish the existence of an

24   element essential to that party's case, and on which that party will bear the burden of proof at

25   trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

26   of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

27   a circumstance, summary judgment should "be granted so long as whatever is before the district

28   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

4

56(c), is satisfied." Id.  On the other hand,

> "[w]hen the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."

Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

1   opposing party's obligation to produce a factual predicate from which the inference may be

2   drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

4   some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

5   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

6   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

7   U.S. at 289).

8           B.      Legal Standard for Substantive Due Process

9           "The extent of a prisoner's right under the [Due Process] Clause to avoid the unwanted

10   administration of antipsychotic drugs must be defined in the context of the inmate's

11   confinement."  Washington v. Harper, 494 U.S. 210, 222 (1990).  "[G]iven the requirements of

12   the prison environment, the Due Process Clause permits the State to treat a prison inmate who has

13   a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to

14   himself or others and the treatment is in the inmate's medical interests."  Id. at 227.  "[D]eference

15   . . . is owed to medical professionals who have the full-time responsibility of caring for mentally

16   ill inmates . . . and who possess, as courts do not, the requisite knowledge and expertise to

17   determine whether the drugs should be used in an individual case."  Id. at 230 n.12.

18           C.      Plaintiff's Motion for Summary Judgment

19           Plaintiff has moved for summary judgment.  ECF No. 41.  However, the motion suffers

20   from several fatal defects.  First, the motion appears to be little more than a declaration that

21   makes allegations regarding discovery, reiterates the allegations of the complaint, and includes

22   various exhibits.  Id.  Next, the motion is not accompanied by a separate statement of facts, as

23   required by Local Rule 260(a).  To the extent plaintiff's declaration can be construed as a separate

24   statement of facts, it does not cite to particular portions of the record to support each fact.  See

25   L.R. 260(a); Fed. R. Civ. P. (c)(1)(A).  Finally, although plaintiff has provided nearly one

26   hundred pages of exhibits, he does not explain how the exhibits demonstrate that he is entitled to

27   summary judgment, and he has not provided any competent evidence that the diagnosis indicated

28   in the records was incorrect or that the treatment ordered was not appropriate.  Plaintiff has failed

6

to "come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial," Miller, 454 F.3d at 987 (citation and internal quotation marks omitted), and his motion for summary judgment should therefore be denied.  However, given plaintiff's pro se status, the contents of the motion will be considered as part of the opposition to defendant's motion for summary judgment.

D.    Defendant's Motion for Summary Judgment

i.    Defendant's Arguments

Defendant moves for summary judgment on the ground that he did not violate plaintiff's right to due process because plaintiff was a danger to himself and the involuntary medication was in plaintiff's best interests.  ECF No. 44.  Plaintiff was simultaneously served with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  ECF No. 44-2; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

ii.    Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Furthermore, although plaintiff has responded to defendant's statement of undisputed facts, he fails to cite to evidence supporting his denials as required by Local Rule 260(b).

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

7

1    upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

2    Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

3    internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

4    "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

5    omitted).

6        Accordingly, though plaintiff has only partially complied with the rules of procedure, the

7    court will consider the record before it in its entirety despite plaintiff's failure to be in strict

8    compliance with the applicable rules.  However, only those assertions in the opposition which

9    have evidentiary support in the record will be considered.

10       Plaintiff argues that defendant violated his right to due process because he was not a

11   danger to himself and did not refuse medication.  ECF No. 52.

12                                   iii.   Undisputed Material Facts

13       At all times relevant to this action, plaintiff was an inmate in the custody of the California

14   Department of Corrections and Rehabilitation.  Defendant's Statement of Undisputed Facts

15   (DSUF) (ECF No. 44-1) ¶ 1; ECF No. 52 at 8.  On July 18, 2016, plaintiff was admitted to

16   California Health Care Facility (CHCF) for placement in the acute treatment facility.[2]  DSUF ¶ 2.

17   On July 19, 2016, plaintiff was evaluated by Dr. Minor, a clinical psychologist, and reported that

18   he was struggling with his placement at the Department of State Hospitals because he believed he

19   was programming well at his previous institution.[3]  DSUF ¶ 3.  Plaintiff further reported

20   depression and symptoms of hypomania, which is defined as impulsive decision making,

21   pressured speech, racing thoughts, and mood lability.  Id.  Plaintiff also reported numerous

22   incidents and events which were causing him stress at the time, including a lock up order and

23   ////

24   ////

---

25   [2]  In response to DSUF ¶ 2, plaintiff states that he denies any inability to function in normal
26   everyday prison life, but does not deny the placement.  Response to DSUF ¶ 2.  DSUF ¶ 2 is
     therefore deemed undisputed.  ECF No. 52 at 8.
27   [3]  Plaintiff admits that he struggled as described in DSUF ¶ 3, but denies that his adjustment
     disorders had any major effect on his everyday life.  ECF No. 52 at 8.  Because plaintiff does not
28   actually dispute the contents of DSUF ¶ 3, it is deemed undisputed.

1   potential rules violation report.[4]  DSUF ¶ 4.  He was transferred to administrative segregation

2   where he exhibited agitation, emotional lability, and feelings of helplessness.  Id.

3      Plaintiff had also recently received information that his nephew had been killed in an

4   incident of gang violence, shortly after which he exhibited a self-harming gesture by wrapping a

5   braided plastic rope around his neck.[5]  DSUF ¶ 5.  He reported feeling trapped, highly agitated,

6   and helpless.  Id.  Dr. Minor noted that plaintiff had made multiple suicide attempts during his

7   incarceration, including attempted electrocution, pill ingestion, and at least seven hanging

8   attempts by tying something around his neck.  DSUF ¶ 6.  Dr. Minor further noted that plaintiff's

9   most recent suicide attempt, which occurred on June 25, 2016, was at his most recent admission

10  to a mental health crisis bed unit where he was found with a braided plastic rope around his neck.

11  Id.

12     Defendant also evaluated plaintiff on July 19, 2016, during which time he reviewed

13  plaintiff's file and medical records, met with plaintiff in person, and diagnosed plaintiff with

14  Bipolar Affective Disorder and Depression.[6]  DSUF ¶ 7.  Defendant considered plaintiff's history

15  of suicide attempts, including the recent incident in which plaintiff was found with a rope around

16  his neck, and opined that this action was taken in the context of a depressive episode.  DSUF ¶ 8.

17  He further opined that in the context of plaintiff's history of suicide attempts, plaintiff had to be

18  considered as presenting a serious danger to himself.  Id.  Plaintiff states that he allowed staff to

19  "to think what they wanted," but disputes that he was a danger to himself.  ECF No. 41 at 4; ECF

20  No. 52 at 4, 6, 10.

21     Defendant offered plaintiff the opportunity to take Risperdal orally as a mood stabilizer

22  and antipsychotic, to which plaintiff responded "I'm not psychotic, I don't have a mental illness, I

23

24  [4]  Plaintiff disputes the relevance of the basis for the rules violation report, but does not deny that
    it was a stressor.  ECF No. 52 at 8, 10.  The remainder of plaintiff's response to DSUF ¶ 4 neither

25  admits nor denies the facts set forth in DSUF ¶ 4, which is deemed undisputed.
    [5]  Plaintiff asserts that being caught with a braided rope and not using it "was a cry for help" and

26  that he "merely allowed prison officials to think what ever they wished commonly prison officials
    come to wrong conclusions."  ECF No. 52 at 10.  This does not dispute the facts contained in

27  DSUF ¶¶ 5 and 6, which are deemed undisputed.
    [6]  Plaintiff's response to DUSF ¶ 7 neither admits nor denies the facts set forth therein (ECF No.

28  52 at 10) and DSUF ¶ 7 is therefore deemed undisputed.

am going to be paroled soon."[7]  DSUF ¶ 9.  Plaintiff was not scheduled to be paroled any time in the near future, and defendant considered this delusion to be further evidence of plaintiff's mental illness and inability to dictate his own medication.  Id.  In accordance with state protocols, defendant completed a declaration in support of the involuntary medication notice for the administration of Risperdal that included his opinion that plaintiff presented a danger to himself sufficient to justify the emergency administration of medication.  DSUF ¶ 10.  The involuntary medication notice was given to plaintiff on July 20, 2016, because he was at immediate risk of self-harm due to his mental disorder and suicidal gestures.  DSUF ¶ 11.  Plaintiff disputes that there was an emergency need for medication or that the notice was based on plaintiff having mental disorders or being at risk of self-harm.  ECF No. 52 at 12.  The involuntary medication order was for Risperdal Consta, a long-acting from of Risperdal with a half-life of two weeks.[8]  DSUF ¶ 12.  This avoids the need for the patient to take the medications orally every day and is safer for the staff in situations where the patient may refuse to take a medication and a backup shot may have to be given.  Id.

In accordance with state protocols, an administrative hearing was held on August 4, 2016, at which defendant testified based upon his examination of plaintiff and review of plaintiff's file.  DSUF ¶ 13; ECF No. 52 at 11.  The hearing resulted in an order determining that plaintiff was a danger to himself and permitted further administration of Risperdal Consta injections, which were administered on five occasions in August and September.  Id.  Plaintiff responded well to his treatment with Risperdal Consta and as his condition improved his medications were adjusted and he was eventually permitted to take Risperdal orally on a voluntary basis.[9]  DSUF ¶ 14.

---

[7]  Plaintiff appears to admit that he stated he was not psychotic and did not have a mental illness but argues that any other statements are mischaracterizations.  ECF No. 52 at 9.  He then addresses defendant's responses to discovery requests and states that his use of "soon" in describing his release was relative.  Id. at 9, 12.  Since plaintiff does not actually dispute any of the facts contained in DSUF ¶ 9, it is deemed undisputed.

[8]  Plaintiff summarily argues that DSUF ¶ 12 is untrue and that a backup shot can easily be given if a patient refuses medication but provides no evidentiary basis for this dispute.  ECF No. 52 at 10-11.  DSUF ¶ 12 is therefore deemed undisputed.

[9]  Plaintiff does not dispute DSUF ¶ 14 and instead argues that he was unable to function on Risperdal and that administering Risperdal is equivalent to doping the recipient.  ECF No. 52 at 11.

iv.  Discussion

Although plaintiff disputes that he suffered from Bipolar Affective Disorder (ECF No. 41 at 4), he has not demonstrated that he is qualified to make that assessment, nor has he provided competent evidence to challenge defendant's diagnosis.  Furthermore, there is no dispute that plaintiff suffered from depression (DSUF ¶¶ 3, 7; ECF No. 52 at 8, 10), and plaintiff's primary argument appears to be that it was unnecessary to submit him to involuntary medication because he was not a danger to himself and he never refused treatment (ECF No. 41 at 3-5, 7; ECF No. 52 at 3-7).

With respect to plaintiff's claim that he was not suicidal or a danger to himself, it is clear from the medical records submitted by both parties that at the time defendant issued the involuntary medication order plaintiff had a long history of depression and suicide attempts (ECF No. 44-3 at 7-8, 10-11, 26; ECF No. 52 at 84, 86-90, 105), had been found with a braided plastic rope around his neck less than one month prior (ECF No. 44-3 at 10, 26; ECF No. 52 at 84, 87), and had expressed suicidal ideation and been on suicide watch just three days prior[10] (ECF No. 52 at 105).  Although plaintiff claims that the placement of a rope around his neck "was a cry for help" and that he was not suicidal, he does not deny his history of suicide attempts and states that he "allowed prison officials to think whatever they wished," indicating that, at a minimum, he allowed prison staff to believe he was suicidal.  ECF No. 41 at 3; ECF No. 52 at 10.  He also does not deny that he was suffering from multiple stressors, and instead simply claims that they did not affect his ability to function.  ECF No. 52 at 8.

Plaintiff's records further reflect that he "has demonstrated self injury and suicidal gestures when he become[s] emotional [sic] dysregulated, perceptions of being unfairly treated/disrespected, helpless, and heightened agitation" and that he "will engage in self injury and then refuse to engaged [sic] in communication or programming of any kind."  ECF No. 44-3 at 8.  Moreover, contrary to plaintiff's assertion that Dr. Minor found he was not a danger to

---

[10]  Plaintiff's motion for summary judgment indicates that he was still on suicide watch at the time he was seen by defendant.  See ECF No. 41 at 3 (stating that plaintiff requested defendant remove him from suicide watch).

1   himself,[11] Dr. Minor opined that plaintiff's chronic and acute risk for suicide were both

2   "Moderate" and that it was difficult to determine whether plaintiff was being forthcoming about

3   his intentions to engage in self-injurious behavior because he denied ever engaging in self-harm

4   despite evidence to the contrary in his records.  Id. at 6, 8.  This evidence establishes that there

5   was a sufficient basis for defendant's conclusion that plaintiff was a danger to himself at the time

6   of evaluation even if plaintiff denied suicidal ideation; it does not support a contrary conclusion

7   or reveal a material factual dispute on the question.

8          Plaintiff also argues that it was unnecessary to give him involuntary injections because

9   while he initially refused to voluntarily take the medication orally, he ultimately signed a

10  psychotropic medication consent form.  ECF No. 41 at 4; ECF No. 52 at 4-7.  In support of this

11  argument, plaintiff provides a copy of the signed consent form.  ECF No. 52 at 102-03.  However,

12  while defendant does not directly address plaintiff's subsequent consent to take oral medication,

13  the involuntary medication notice reflects that the order was sought based upon plaintiff's lack of

14  capacity to consent rather than his refusal.  ECF No. 44-3 at 22.  Defendant provided the

15  following explanation for his conclusion that plaintiff lacked capacity to consent:

16              I interviewed this patient on 7/19/16 and offered Risperdal to him as
             a mood stabilizer and an anti psychotic [sic] and he responded "I'm
17              not psychotic, I don't have a mental illness, I am going to be paroled
             soon", Mr. Curley does not appear to be able to intelligently evaluate
18              the information provided to him regarding his mental illness or
             medications to treat it.
19

20  Id. at 22.  Defendant further attests in support of his motion for summary judgment that "[i]n

21  reality, Plaintiff was not scheduled to be paroled any time in the near future.  I considered this

22  delusion to be further evidence of Plaintiff's mental illness, and inability to dictate his own

23  medication."  DF's Decl. (ECF No. 44-3 at 3) ¶ 11.  Plaintiff's response to defendant's motion for

24  summary judgment also belies his claim that he would have taken the medication voluntarily, as

25  he states that he could "comprehend only one thing to try and get off by taking a little of the

26

27  _____
    [11]  Plaintiff attaches other records that indicate that he was doing well with his treatment and
28  presently at low risk for suicide.  ECF No. 52 at 84-86, 91-92.  However, those evaluations are
    from October and November 2016, when plaintiff was no longer being involuntarily medicated.

1   DOPE Risperdal orally on a voluntary basis chewing and spitting it out was the only way off of

2   the DOPE." ECF No. 52 at 11.  The evidence therefore establishes that plaintiff was unable to

3   consent and was unlikely to remain compliant with any medication prescribed despite his

4   representation that he would take it voluntarily.  The evidence does not support a contrary

5   conclusion, nor reveal a material factual dispute on this question.

6          Finally, to the extent that plaintiff appears to argue that being involuntarily medicated was

7   not in his medical interest because he had a reaction to the shot and almost died on September 22,

8   2016 (ECF No. 41 at 7), the evidence provided does not support this assertion.  Although plaintiff

9   alleges that his reaction on September 22, 2016, was caused by the injections and that he almost

10  died, the attached records indicate that he became dizzy and lightheaded after taking two Tylenol

11  3s. Id. at 7, 100, 123-25, 150.  Furthermore, while it appears that Risperdal is currently on

12  plaintiff's allergy list, the records show that it was not entered as an allergy until August 28,

13  2018. Id. at 149.  Even if the court assumes that plaintiff's reaction on September 22, 2016, was

14  due to the injections, it occurred two days after his last injection and there is no evidence that

15  defendant had any indication that plaintiff was allergic to Risperdal.  Plaintiff has also failed to

16  submit any competent evidence showing that prescribing Risperdal was not medically

17  appropriate.

18                  v.  Conclusion

19          As set forth above, the undisputed evidence demonstrates that plaintiff had a serious

20  mental illness, was a danger to himself, and that defendant's involuntary medication order was in

21  his medical interest.  See Harper, 494 U.S. at 227.  Plaintiff has not identified competent evidence

22  raising a triable issue of fact on these dispositive issues.  Defendant's motion for summary

23  judgment should therefore be granted.

24  II.     Plain Language Summary of this Order for a Pro Se Litigant

25          Your motion to compel is being denied because (1) you filed it after discovery was closed,

26  and (2) it does not explain why defendant's responses to your requests were not sufficient.  Your

27  motion to amend is being denied because you did not include a copy of a proposed amended

28  ////

                                        13

1   complaint or explain what amendments you want to make, which is required for a motion to

2   amend.

3        It is being recommended that your motion for summary judgment be denied because it is

4   not properly supported with evidence.  It is also being recommended that defendants' motion for

5   summary judgment be granted because there is no need for a trial.  The evidence shows that you

6   had a serious mental illness, were a danger to yourself, and the medication order was legally

7   permissible.

8        IT IS HEREBY ORDERED that:

9        1.  Plaintiff's motion to compel (ECF No. 45) is DENIED;

10       2.  Plaintiff's motion to amend (ECF No. 50) is DENIED; and

11       3.  Plaintiff's request to stay defendant's motion for summary judgment (ECF No. 52 at

12  6-7) is DENIED.

13       IT IS FURTHER RECOMMENDED that:

14       1.  Plaintiff's motion for summary judgment (ECF No. 41) be DENIED;

15       2.  Defendant's motion for summary judgment (ECF No. 44) be GRANTED.;

16       3.  Judgment be entered for defendant; and

17       4.  The Clerk of the Court be directed to close this case.

18       These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23  objections shall be served and filed within fourteen days after service of the objections.  The

24  parties are advised that failure to file objections within the specified time may waive the right to

25  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26  DATED: August 15, 2022

27  ALLISON CLAIRE

28  UNITED STATES MAGISTRATE JUDGE

14